UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

---

| | |
|---|---|
| IN RE PRADAXA ) | MDL No. 2385 |
| (DABIGATRAN ETEXILATE) ) | 3:12-md-02385-DRH-SCW |
| PRODUCTS LIABILITY ) | Judge David R. Herndon |
| LITIGATION ) | |

---

**This Document Relates to:**

*Anthony Ougle v. Boehringer Ingelheim Pharmaceuticals, Inc. et al.*, No. 3:13-cv-60030-DRH-SCW

## ORDER

**HERNDON, District Judge:**

### INTRODUCTION

This matter is before the Court on the motion to intervene and substitute party filed by Anthony Ougle's children ("Movants") (Doc. 10).[1] Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") has responded (Doc. 12) and Movants have replied (Doc. 16). Also pending is Movants' motion for hearing (Doc. 11).

### BACKGROUND

In 2013, plaintiff Anthony Ougle, Sr., filed a Complaint in the Eastern District of Louisiana alleging an episode of internal bleeding due to Pradaxa (Doc. 1). On August 14, 2013, the case was transferred to this MDL (Doc. 1).

---

[1] Movants indicate plaintiff is incorrectly identified in the caption and previous pleadings as Anthony Ougle and that the correct spelling is Ougel. At this time, the Court references plaintiff according to the spelling of his name as filed in his complaint.

On May 28, 2014, the Court announced a Settlement Program, created by a private Master Settlement Agreement ("MSA"), negotiated between the Pradaxa MDL Plaintiffs' Leadership Counsel and the Boehringer Defendants (12-2385 Doc. 515). The MSA set forth specific requirements for the voluntary settlement program, and each Pradaxa Claimant wishing to opt in to the settlement was required to submit an Opt-in Form by the Court-established deadline of July 9, 2014.

Mr. Ougle timely opted into the MSA. Mr. Ougle's counsel (at the time),[2] John D. Sileo, certified Mr. Ougle's Opt-In form on July 8, 2014 (Doc. 12-2). As a result, Mr. Ougle became a Participating Claimant under the MSA. The MSA (Section 5.1) and the certification (Doc. 12-2) specifically provided that the election to opt-in to the settlement was irrevocable and that the claimant was waiving all rights to pursue any Pradaxa related claims in court.

Under the MSA, each Participating Claimant was required to post the Claims Administrator's secure portal a Claims Package Submission containing the following:

> 1. A Phase One Payment Application and, if applicable, a Phase Two Supplemental Payment Application
>
> 2. An executed Medical Records Authorization Form
>
> 3. An executed Release
>
> 4. An executed Stipulation of Dismissal

---

[2] As is noted throughout, under Louisiana law, it appears that Mr. Sileo ceased being Mr. Ougle's counsel when Mr. Ougle died in September 2014.

      5. If applicable, a Death Certificate

(MSA ¶ 7.1). As a participating claimant, Mr. Ougle executed the required release (Doc. 14). Mr. Ougle's release is dated July 6, 2014. Pursuant to the signed release, Mr. Ougle released all claims – including future claims – related in any way to Pradaxa. The release also authorized Mr. Ougle's counsel to execute the stipulation of dismissal required under the MSA (Doc. 14 p. 10). The executed stipulation of dismissal, dated August 5, 2014, was submitted to the Claims Administrator as required under the MSA (*see* Stipulation of Dismissal, filed extemporaneously herewith, under seal, as Exhibit A). Once lien resolution was completed, settlement funds were distributed to Mr. Ougle's counsel (Doc. 12 pp. 2-3).

      According to pleadings filed by Movants, Mr. Ougle died on September 3, 2014 – after opting into the MSA and after executing the release and stipulation of dismissal. Mr. Ougle's action remains pending in the MDL only because of the group dismissal process adopted by the Court in CMO 90.[3] The next submission under CMO 90 for dismissing settled cases will not be filed until December 15, 2015. Accordingly, but for the dismissal submission to be filed in December, the settlement in this case is complete and funds have been paid to Mr. Ougle's attorney of record.

---

[3] Under the MSA liens are resolved by Providio, the lien resolution administrator, before individual settlements are paid. Under CMO 90, cases that have been paid are subsequently submitted in groups for dismissal in accord with the MSA.

On September 3, 2015, Movants, represented by different counsel than Mr. Ougel, filed the instant motion to substitute plaintiff and intervene (Doc. 10, attaching Doc. 10-2, a complaint in intervention). Movants also filed another new complaint, similar to the complaint in intervention, in the Eastern District of Louisiana (Doc. 12-3). Both complaints allege that Mr. Ougle suffered a myocardial infarction in September 2014 that resulted in his death, and movants allege that Mr. Ougle's death is attributable to Pradaxa.

BIPI contends the request to substitute should be denied because (1) their claims were extinguished by Mr. Ougle's release and therefore do not survive for purposes of pursuing the claims set forth in the complaint in intervention, and (2) this Court's Case Management Order 86 prescribes the procedure for Movants to follow for purposes of claiming any settlement funds available to them as a result of their father's participation in the Pradaxa settlement. BIPI further contends the request to intervene for the purpose of filing a complaint in intervention should be denied because Movants' claims are barred by the express terms of Mr. Ougel's signed release and the Movants cannot satisfy Federal Rule of Civil Procedure 24(b).

Movants have replied (Doc. 16). Movants contend Mr. Ougle's decision to participate in the settlement did not extinguish his claims. Rather, they argue, the decedent's decision to opt-in merely exchanged his action in tort for one in contract. According to Movants, the distribution of settlement funds to attorney John Sileo amount to an offer in settlement that must be accepted by a party with

the requisite legal capacity. Movants contend that under Louisiana law, the attorney-client relationship terminated automatically when Mr. Ougle died. Accordingly, only Movants (and not John Sileo) have the authority to accept any offer of settlement proffered after Mr. Ougle's death. Movants have also introduced a question as to the authenticity of Mr. Ougle's signature on the requisite release. However, as is discussed below, it is not entirely clear whether the authenticity issue is presently before the Court.

## ANALYSIS

**Motion to Substitute and Intervene**

As a preliminary matter, the Court notes Movants have questioned the authenticity of Mr. Ougle's signature on the executed release (Doc. 16 p. 5 n.4). Movants attach the affidavit of Louis Paul Ougel, Sr. as support for this contention (Doc. 16-1). However, Movants also state "there is no need to litigate the genuineness of the signature if movers are satisfied that the procedures in the Settlement Agreement were followed and a correct amount offered and are convinced that they would not be likely to fare any better outside of the Settlement Agreement." (Doc. 16 p. 5 n.4).

As is explained more fully in the following section, to the extent that Movants are asserting the signature on the release is not authentic, the Court must hold an evidentiary hearing to resolve this issue and cannot rule on Movants' motion until the authenticity issue is resolved. The following assessment

is given assuming there is no dispute with regard to the authenticity of Mr. Ougle's signature on the release.

Settlement agreements are contracts, and their construction and enforcement are governed by basic contract principles, *Gutta v. Standard Select Trust Insurance Plans*, 530 F.3d 614, 617 (7th Cir.2008); *Wilson v. Wilson*, 46 F.3d 660, 666 (7th Cir. 1995), under applicable state contract law - in this case, the law of Illinois.[4] *Dillard v. Starcon International, Inc.*, 483 F.3d 502, 507 (7th Cir.2007); *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000).

For a settlement agreement to be enforceable under Illinois contract law, there must be an offer, acceptance, and a "meeting of the minds" as to the material terms of the agreement. *Petrich v. MCY Music World, Inc.*, 371 Ill.App.3d 332, 345, 308 Ill.Dec. 968, 862 N.E.2d 1171 (1st Dist.2007); *Magee v. Garreau*, 332 Ill.App.3d 1070, 1076, 266 Ill.Dec. 335, 774 N.E.2d 441 (2nd Dist.2002).

In the instant case, Mr. Ougle accepted the terms of the MSA (the offer) by executing the release and authorizing his attorney to opt-in to the MSA. The submission of the opt-in form by Mr. Ougle's attorney communicated Mr. Ougle's acceptance of the terms of the MSA in a form mutually agreed to by the parties. Thus, despite Movants' arguments to the contrary, <u>contract formation was completed prior to Mr. Ougle's death</u>.[5] Under the MSA, payments made by the

---

[4] The MSA provides for application of Illinois law. *See* MSA Section XIII. Further, the release includes an Illinois choice of law provision (Doc. 14 p. 7)

[5] Movants note the Louisiana Supreme Court has held that the death of a client terminates the attorney-client relationship as a matter of law. While that may be the case, Mr. Ougle accepted the

Claims Administrator to Participating Claimants relate to *performance* under the terms of the MSA and not contract *formation.* Thus, the assertion that distribution of the funds amounts to an offer that must be reviewed and accepted or rejected by Mr. Ougle's heirs misses the mark. Here, contract formation was completed prior to Mr. Ougle's death and while John D. Sileo was still Mr. Ougle's attorney.

As outlined in BIPI's briefing, the executed release released all of Mr. Ougle's present and future claims related to his use of Pradaxa. This includes the claims asserted by Movants. Additionally, Mr. Ougle's decision to opt-in to the settlement program was irrevocable.

Considering the above, it is evident Mr. Ougle's claims (and the claims of Movants) were extinguished as a result of his irrevocable opt-in to the settlement program and his execution of a release of all claims. *See Wrightsell v. Cook County,* 599 F.3d 781, 784 (7th Cir. 2010) ("in an ordinary civil settlement it is taken for granted that the settlement extinguishes all rights to further prosecution of the suit").

Because Mr. Ougle's claims have been extinguished, substitution under Rule 25 is improper. *See* Fed. R. Civ. P. 25 ("If a party dies and the claim is not extinguished, the court may order substitution of the proper party."). Likewise, Movants' request to intervene must be denied because they cannot meet the

---

terms of the MSA (forming the subject contract) prior to his death and while John D. Sileo was still his attorney.

requirements of Rule 24(b). *See Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000) (to intervene under Rule 24, "at some fundamental level the proposed intervenor must have a stake in the litigation.").

With regard to CMO 86, the Court agrees that as of September 3, 2014, Mr. Ougle became a "Deceased Claimant" as that term is defined therein ("any person who ingested Pradaxa and asserted a claim under the Settlement Agreement . . . who is deceased at the time payment is to be distributed by the Claims Administrator on the claim.") (CMO 86 ¶ 1). In the instant case, CMO 86 materials were not required prior to distribution of funds because no one informed the Claims Administrator of Mr. Ougle's death. Accordingly, the funds have already been distributed to attorney John D. Sileo.[6] Nonetheless, as noted by BIPI, nothing in CMO 86 precludes the Claims Administrator from remaining involved to accept CMO 86 materials from Movants and to facilitate the distribution of the funds to Mr. Ougel's heirs.

For the reasons discussed above, assuming Movants inform the Court there is no dispute with regard to the authenticity of Mr. Ougle's signature on the release (as described below), the Court will (1) deny the motion to substitute and intervene and (2) direct Movants to submit CMO 86 materials to the Claims Administrator to facilitate distribution of the funds accordingly.

---

[6] The Court notes that, under Louisiana law, attorney Sileo appears to be Mr. Ougle's former counsel.

**Authenticity of Signature on Release**

A district court has the power to enforce a settlement agreement in a case pending before it. *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). When the material facts are not in dispute, "the question whether a contract has come into being is one of law." *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 618 (7th Cir. 2008). If there are disputed material facts, the district court should hold an evidentiary hearing. *Wilson*, 46 F.3d at 664; *see also Sims–Madison v. Inland Paperboard & Packaging, Inc.*, 379 F.3d 445, 449 (7th Cir. 2004).

As noted above, it is not entirely clear whether Movants are asserting there is an issue with regard to the authenticity of Mr. Ougle's signature on the release. To the extent Movants are raising this issue, there is a disputed material fact and the Court must hold an evidentiary hearing resolving this fact. If the Court determines the signature is not authentic, Mr. Ougle's opt-in to the settlement would be invalid. As such, Mr. Ougle would become a non-participating claimant, would be withdrawn from the settlement, and Mr. Ougle's heirs would have to proceed under CMO 78.

On the other hand, if there is no dispute with regard to the authenticity of Mr. Ougle's signature: (1) an evidentiary hearing is not necessary and (2) the Court may proceed with entering an order denying the motion to substitute and intervene and directing Movants to proceed under CMO 86.

## CONCLUSION

In light of the above, the Court will **DEFER** ruling on Movants' motion to substitute or intervene. **The Court DIRECTS Movants to file a notice with the Court, on or before October 16, 2015, stating whether Movants are asserting Mr. Ougle's signature on the release is not authentic**. If a question as to the authenticity of Mr. Ougle's signature is asserted, the Court will schedule an evidentiary hearing. If Movants inform the Court there is no dispute with regard to the authenticity of Mr. Ougle's signature, the Court will enter an order summarily denying Movants' motion to substitute or intervene (for the reasons described herein).

**IT IS SO ORDERED.**

Signed this 8th day of October, 2015.

Digitally signed by David R. Herndon
Date: 2015.10.08 13:33:57 -05'00'

**United States District Judge**